# SIEGEL TEITELBAUM & EVANS, LLP

ATTORNEYS AT LAW
260 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10016

TELEPHONE: (212) 455-0300
FACSIMILE: (212) 448-0066

January 6, 2021

**VIA ECF**

Jennifer Jude and Allison Rovner, Assistant United States Attorneys
United States Attorney's Office, Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

Re: ***Coney Island Prep, et al. v. U.S. Department of Health & Human Services, et al.*, No. 1:20 Civ. 9144 (VM)**

Dear Ms. Jude and Ms. Rovner:

We write on behalf of Plaintiffs in response to your December 30, 2020 pre-motion letter ("Letter"), which repeats many of your arguments in opposition to our preliminary injunction, and, thus, ignores the standard applicable to any proposed motion to dismiss. Notwithstanding these deficiencies, and in light of the Court's December 11, 2020 Order ("Order"), Plaintiffs intend to amend this action's operative complaint (Dkt. 1) ("Complaint"), with leave of the Court or pursuant to Fed. R. Civ. P. 15(a)(1)(B) following a motion to dismiss.

**Even Without Amendment, the Complaint is Sufficient.** The Court's Order stated that, unlike in a preliminary injunction, the standards for a motion to dismiss favor plaintiffs. Order at 12; *see Lawrence v. Town of Brookhaven*, 2007 U.S. Dist. LEXIS 94947, at *36 (E.D.N.Y. Dec. 26, 2007), *aff'd* 2010 U.S. App. LEXIS 19698 (2d Cir. Sept. 22, 2010) ("[T]he standard on a motion to dismiss is quite different from the standard for granting a preliminary injunction."). Accordingly, the Complaint's well-pleaded factual allegations must be treated as true and all inferences drawn in Plaintiffs' favor. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015). Plaintiffs "bear[] no evidentiary burden," *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017); they "must simply establish that the allegations in the Complaint are sufficient to render [their] claims plausible." *Lawrence*, 2007 U.S. Dist. LEXIS 94947, at *36. So, irrespective of the preliminary injunction ruling, your recycled arguments do not support a motion to dismiss.

Moreover, the Government's factual basis for attacking Plaintiffs' standing—that they "have not been deprived of any information to which they are entitled," Letter at 1—is wrong. As a reminder, *ten* of the nineteen statutes at issue require disclosures *to the public*—including Plaintiffs.[1] In all but one of these cases, the Government's prior custom complied with the law and informed the public.[2] Given Defendants' admissions of non-performance and clear duty to make certain information widely available, Plaintiffs meet the pleading standard on the bulk of their

---

[1] These include a public meeting (42 U.S.C. § 247d-4(c)(5)(B)), technical and reporting standards, (*id.* § 247d-4(b); four reports (*id.* §§ 247d-3a(i)(1)(E), (j) and 247d- 3b(i)(1); § 247d-6b(c)(3); § 300hh-10(d); § 300hh-10(b)(7)); and the information underlying four others (*id.* § 242m(a); § 242p(a); § 299a-1(a)(6); § 300u-6(f)(1)).

[2] At this phase, to establish an informational injury, Plaintiffs only need cite a statute which "(on [their] reading) requires that the information be publicly disclosed and there is no reason to doubt [their] claim that the information would help [them]." *NRDC, Inc. v. United States EPA*, 961 F.3d 160, 168–69 (2d Cir. 2020).

claims.

**Plaintiffs Will Amend Their Complaint as Invited by the Court's Rules.** Nonetheless, we propose a different course that will benefit both parties, the Court, and the public. First, Plaintiffs seek to amend their Complaint—to address the issues raised in the Court's Order, and, at the same time, revise our claims as warranted. Under Rule 15 of the Federal Rules of Civil Procedure, "[t]he court should freely give leave when justice so requires." At this early posture, even if the Court were to treat the Letter as a motion to dismiss, it would nonetheless be appropriate to deny the letter-motion as moot and grant Plaintiffs leave to amend. *See, e.g.*, *Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, 2017 U.S. Dist. LEXIS 50723, at *4-*5 (S.D.N.Y. Mar. 27, 2017). Indeed, Rule 15 allows Plaintiffs to amend "as a matter of course" within 21 days of a Rule 12 motion to dismiss.

Further to our intent to amend the Complaint, Plaintiffs continue to monitor the Government's performance of their outstanding duties. We observed that, as they represented, the Government published the latest National Healthcare Quality and Disparities Report ("AHRQ Report") by December 31, 2020. The report was immediately helpful to Plaintiffs.[3] Similarly, on December 7, the government made public a national database of hospital-reported Covid-19 data. While this database is not identical to the original available through the CDC's NHSN program, its disclosure has been immediately helpful to our clients.[4] Indeed, these disclosures have been especially helpful when used together.[5] Accordingly, we intend to withdraw our claim with respect to the AHRQ Report and will modify or withdraw our Section 706(2) and other claims as appropriate. By contrast, based on our research, the Government has failed to produce several reports that it represented to the Court would be produced by the end of 2020. *See* Opp. Br. (Dkt. 33) at 3-17; *see also* Reply Br. (Dkt. 41) at 20 (chart). It promised others this month or shortly thereafter, and these may also lapse. Thus, in the same way that certain claims may be eliminated

---

[3] *See* https://www.ahrq.gov/research/findings/nhqrdr/nhqdr19/index.html. Absent the report, Plaintiffs were denied the ability to "use this report's analyses to understand the outcomes for racial and ethnic, insurance, income, and residence location groups," page ES3. Now, comparing tables on pages O7 and O33, Plaintiff Levine has observed that New York State has among the highest number of community hospitals but among the lowest quality of health care. Delving into the report's underlying data, he can see some of the root causes of these disparities, such as New York's higher asthma rates and incidence of diabetes, especially among racial and ethnic minority groups. *See* Data Query Tool at https://nhqrnet.ahrq.gov/inhqrdr/data/query. The report also discloses early data sources on Covid-19 disparities related to "people with underlying conditions and older adults" and the "disproportionate impact of the pandemic on racial and ethnic groups," page L3 (citing to reports on page R15). All this information is invaluable to designing legislation that addresses these specific vulnerabilities during the pandemic and beyond. Similarly, through the Data Query, Housing Works can access the latest state-by-state data on HIV/AIDS, core to their mission.

[4] *See* https://healthdata.gov/dataset/covid-19-reported-patient-impact-and-hospital-capacity-facility. This new database provides near real-time pandemic information to Plaintiffs, who find Covid-19 case data (and hospital resources more broadly) useful. Specifically, Plaintiff Levine can use the data from nearby states to develop meaningful travel restrictions or appeal for medical staff and resources. Locally, he can observe hospitals in his district (e.g., New York-Presbyterian Irving) for risk of overflow, and redirect constituents to alternative facilities elsewhere in the City. Similarly, Plaintiffs King and Housing Works can monitor hospitals like the Brooklyn Hospital Center, Kings County Hospital, Bellevue Hospital, and Mt. Sinai to determine how best to position their COVID-19 related programs. And Plaintiffs Joseph and Coney Island Prep can now monitor Coney Island Hospital to understand the real-time risks to their community and manage school operations accordingly.

[5] Plaintiff Greenberg, at Right 2 Health Action, is already comparing data sets from the 2019 AHRQ Report—*see, e.g.*, pages A16, D3, D6, D48, D56 and D73 and associated disparities tables—and the hospital Covid-19 database to better understand these disparities in their work with local NYC policymakers on targeting vaccine distribution to areas with the greatest need and members of Congress on forthcoming healthcare legislation.

by the Government's fulfilment of its duties, others may be reinforced or expanded by its continued failure to meet statutory deadlines, as well as those it has imposed on itself. Notification by the Government of further disclosures affecting our claims would be useful to all parties.

Plaintiffs' forthcoming amendments will respond to the Court's invitation that they affirm their injuries by explaining how the information they seek "would undoubtedly be helpful." Order at 14. The amended complaint will make clear that the withheld information is valuable not only to combat Covid-19, but also to Plaintiffs' efforts in the aftermath to build policy and programs resilient to future public health threats and in the normal course of their operations. As one example, per 42 U.S.C. § 300hh-10(d)(2)(K), the PHEMCE Countermeasures SIP is required annually to be "made publicly available" and the most current version dates back three years to 2017. It is not merely a "future-looking plan" as the Government suggests, Opp. Br. at 8, but recounts in detail then-recent federal emergency preparations—including substantial outreach to "non-federal stakeholders."[6] This includes a wide-range of webinars and information tools (pp. 43-48)—related to topics like countermeasure "distribution and planning" (p. 43), "maximizing [countermeasure] shelf life" (p. 45), and various sessions related to countermeasure supply chain management (p. 45-46)—and the PHEMCE makes clear it will produce further tools for "all stakeholders" and "all civilian populations" (p. 6). The SIP also addresses preparations for the "needs of at-risk populations," defined as various populations whom all of our clients in one way or another directly serve (pp. 49-51). Up-to-date information and training of this kind could have been put to immediate use by our clients during this pandemic: plaintiff Levine in his efforts to pass legislation to source countermeasures that continue to be in short supply for New York City; plaintiffs King and Housing Works' ongoing Covid-19 testing, the management of countermeasures in the primary care of their patients, and their efforts to distribute countermeasures to those in need; plaintiffs Joseph and Coney Island Prep's own supply chain and countermeasure management challenges in preparing to reopen their school; and plaintiff Greenberg's activities at the hospital and public health advocacy efforts.[7]

Our amended complaint will include more factual allegations of this kind. Just as Plaintiffs can demonstrate the specific "helpfulness" of the AHRQ Report, the hospital Covid-19 database, and the Countermeasures SIP to their pandemic efforts and beyond, they can do the same for many of the other reports at issue—which largely expand or provide new vantage on the kind of public health and emergency preparedness information whose helpfulness was established above. Furthermore, additional plaintiffs may join the suit whose presence will address any other standing concerns. Of course, if with respect to any of our claims, we feel we cannot meet the standard articulated in the Order, we will narrow our complaint accordingly.

---

[6] *See* https://www.phe.gov/Preparedness/mcm/phemce/Documents/2017-phemce-sip.pdf. Indeed, by its own description, the Government authors of the SIP "work[] closely with" various partners including "state, tribal, local, and territorial (STLT) governments, health systems, academia, private industry, non-governmental organizations (NGO) and *ultimately the American people*" (p. 9) (emphasis added). As further evidence that the SIP is intended for broad public use, it specifically states that in response to public health emergencies "whether known or unknown, novel or reemerging, natural or intentional," the Government "must communicate [its] capabilities to the American public before and during an emergency," (p. 7).

[7] Even information related to non-Covid diseases like Zika and Ebola (*see, e.g.*, pp. 27-36) would reveal important aspects of the Government's approach to infectious disease threats generally—especially as to the production and availability of diagnostic supplies (pp. 29-30) and respiratory protective devices (p. 55), as well as the principles underlying established testing and vaccination strategies (pp. 29-32, 44-46).

Sincerely,

| | |
|---|---|
| */s/ Norman Siegel* | */s/ Kahlil C. Williams* |
| Norman Siegel | Marjorie J. Peerce |
| Herbert Teitelbaum | BALLARD SPAHR LLP |
| Cary McClelland | 1675 Broadway, 19th Floor |
| Goutam Jois | New York NY 10019 |
| SIEGEL TEITELBAUM & EVANS, LLP | Phone: (646) 346-8039 |
| 260 Madison Avenue, 22nd Floor | |
| New York, New York 10016 | Kahlil C. Williams |
| Phone: (212) 455-0300 | Michael R. McDonald |
| | BALLARD SPAHR LLP |
| | 1735 Market Street, 51st Floor |
| | Philadelphia PA 19103 |
| | Phone: (215) 665-5000 |

cc (via ECF): Hon. Victor Marrero, U.S.D.J.